## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CENTRAL LABORERS' PENSION FUND,<br>NORTH CENTRAL ILLINOIS LABORERS'<br>  HEALTH AND WELFARE FUND,<br>NORTHERN ILLINOIS & IOWA LABORERS'<br>  HEALTH & WELFARE FUND,<br>NORTHERN ILLINOIS LABORERS' ANNUITY FUND,<br>ILLINOIS LABORERS AND CONTRACTORS JOINT<br>  APPRENTICESHIP & TRAINING TRUST FUND,<br>LABORERS-EMPLOYERS COOPERATION AND<br>  EDUCATION TRUST,<br>MIDWEST REGION FOUNDATION FOR FAIR<br>  CONTRACTING, INC.,<br>MIDWEST REGION ORGANIZATION COMMITTEE,<br>GREAT PLAINS LABORERS' VACATION FUND,<br>and the GREAT PLAINS LABORERS' DISTRICT<br>  COUNCIL WORKING DUES – CHECK OFF FUND,<br><br>                Plaintiffs,<br><br>   v.<br><br>PREFERRED CONCRETE & EXCAVATING, INC.,<br>an Illinois corporation, and<br>GERALD HARTMAN, individually,<br><br>                Defendants. | **15-C-6799** |

## COMPLAINT

Plaintiffs Central Laborers' Pension Fund, *et al*. (collectively "Plaintiff Funds"), by their attorneys, complain against Defendants PREFERRED CONCRETE & EXCAVATING, INC. and GERALD HARTMAN, as follows:

### COUNT I
against
PREFERRED CONCRETE & EXCAVATING, INC.
(*Claim under ERISA for delinquent fringe benefit fund contributions and related amounts*)

1.    This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132, 1145 ("ERISA"); the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a) ("LMRA"); 28 U.S.C. § 1331; and federal common law.

2. Plaintiff Funds are multiemployer pension funds established pursuant to collective bargaining agreements between, on the one hand, the Laborers International Union of North America (the "Union") and local unions and district councils affiliated with the Union, and, on the other hand, certain employers and employer associations. The Union and its affiliated local unions and district councils are labor organizations within the meaning of the LMRA, 29 U.S.C. § 152(5), representing employees in an industry affecting commerce as defined by the LMRA, 29 U.S.C. § 185(a).

3. Plaintiff Funds receive fringe benefit contributions and dues payments from certain employers pursuant to collective bargaining agreements between, on the one hand, the Union and local unions and district councils affiliated with the Union, and, on the other hand, certain employers and employer associations, all on behalf of employees covered by the collective bargaining agreements. The Plaintiff Funds' right to receive fringe benefit contributions and dues payments also arises pursuant to participation agreements between the Plaintiff Funds and employers.

4. Plaintiffs Central Laborers' Pension Fund and Central Laborers' Annuity Fund are the authorized collection agents for other, affiliated employee benefit funds with respect to fringe benefit contributions and dues payments.

5. PREFERRED CONCRETE & EXCAVATING, INC. is an Illinois corporation doing business in (and with its principle place of business in) the Northern District of Illinois. Venue in this district is proper under ERISA, 29 U.S.C. § 1132(e)(2); and 28 U.S.C. § 1391(b). PREFERRED CONCRETE & EXCAVATING, INC. is an "employer" and a "party-in-interest" as those terms are defined by, respectively, Sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

6. PREFERRED CONCRETE & EXCAVATING, INC. became a party to and bound by collective bargaining agreements with the Union (and/or one or more local unions and district councils affiliated with the Union) by virtue of its execution of one or more memorandum of

2

agreements or other collective bargaining agreements. Copies of a signature page of one such collective bargaining agreement is attached as *Exhibit A*, with a supplemental agreement attached as *Exhibit B*. PREFERRED CONCRETE & EXCAVATING, INC. has never terminated the collective bargaining agreements and they remain in effect.

7. By virtue of certain provisions contained in the collective bargaining agreement(s), PREFERRED CONCRETE & EXCAVATING, INC. became a party to and bound by the Plaintiff Funds' trust agreements.

8. PREFERRED CONCRETE & EXCAVATING, INC. became a party to and bound by one or more participation agreements with the Plaintiff Funds. Copies of such participation agreements are attached as *Exhibit C* and *Exhibit D*. PREFERRED CONCRETE & EXCAVATING, INC. has never terminated the participation agreements and they remain in effect.

9. By virtue of certain provisions contained in the participation agreement(s), PREFERRED CONCRETE & EXCAVATING, INC. became a party to and bound by the Plaintiff Funds' trust agreements.

10. PREFERRED CONCRETE & EXCAVATING, INC. became a party to and bound by the collective bargaining agreements, participation agreements and trust agreements by virtue of its signing and submitting (and certain provisions contained in) employer contribution report forms to the Plaintiff Funds.

11. PREFERRED CONCRETE & EXCAVATING, INC. became a party to and bound by the collective bargaining agreements, participation agreements and trust agreements by virtue of its withholding of (some but not all) deductions and dues consistent with the collective bargaining agreements, participation agreements, and trust agreements.

12. PREFERRED CONCRETE & EXCAVATING, INC. became a party to and bound by the collective bargaining agreements, participation agreements and trust agreements by making (some but not all) employee fringe benefit contributions and dues payments to the Plaintiff Funds.

13. Under the terms of the collective bargaining agreements, participation agreements and trust agreements, PREFERRED CONCRETE & EXCAVATING, INC. is required to make contributions and dues payments to the Plaintiff Funds on behalf of employees performing work covered by the collective bargaining agreement, the contributions and dues are required to be at the hourly rates indicated in the collective bargaining agreements, participation agreements and trust agreements. Under the terms of the collective bargaining agreements, participation agreements and trust agreements, PREFERRED CONCRETE & EXCAVATING, INC. is also required to submit monthly remittance reports identifying, *inter alia*, the employees covered under the collective bargaining agreement and the amount of contributions and dues to be remitted on behalf of each covered employee.

14. PREFERRED CONCRETE & EXCAVATING, INC. failed and refused to timely pay contributions for the following months when due in accordance with the provisions of the collective bargaining agreements, participation agreements, and trust agreements:

> Delinquencies Contributions (10-12/2014, Local 727): $56,288.08
> Delinquencies Contributions (various; Local 32): $2,281.02
> Delinquencies Contributions (various; Local 727): $7,982.21
> **Total: $66,551.31**

15. The participation agreements and trust agreements provide for a penalty assessment equal to 10% of the contributions unpaid on the 15th day of the month next following the month for which the contributions are due. ERISA additionally provides, in 29 U.S.C. § 1132(g)(2)(C), that upon recovery of unpaid benefit contributions by a fiduciary of a benefit plan, "the court shall award the plan…liquidated damages provided for under the plan in an amount not in excess of 20 percent."

16. Because contributions were not paid when due, PREFERRED CONCRETE & EXCAVATING, INC. incurred 10% penalty assessments in accordance with the participation agreements and trust agreements totaling not less than the following:

4

| | | |
|---|---|---|
| Delinquent Contributions (10-12/2014, Local 727): | $5,628.81 | (see ¶ 14 above) |
| Delinquencies Contributions (various; Local 32): | $228.10 | (see ¶ 14 above) |
| Delinquencies Contributions (various; Local 727): | $798.22 | (see ¶ 14 above) |
| Delinquencies Contributions (09/2014; Local 727): | $1,148.90 | |
| Delinquencies Contributions (10/2014; Local 727): | $1,604.04 | |
| **Total:** | **$9,408.07** | |

17. The total amount owed by PREFERRED CONCRETE & EXCAVATING, INC. pursuant to the collective bargaining agreements, participation agreements, and trust agreements is not less than $28,728.38 (consisting of not less than: $66,551.31 in delinquent fringe benefit contributions, not less than $9,408.07 in late payment penalties, and reflecting payment credits of $47,231).

18. PREFERRED CONCRETE & EXCAVATING, INC. has failed and refused to pay the amount of $28,728.38 known to be due to Plaintiffs.

19. Plaintiffs have been required to employ the undersigned attorneys to identify and pursue collection of the amount due from PREFERRED CONCRETE & EXCAVATING, INC.

20. ERISA provides, in 29 U.S.C. § 1132(g)(2)(D), that upon recovery of unpaid benefit contributions by a fiduciary of a benefit plan, "the court shall award the plan…reasonable attorney's fees and costs of the action, to be paid by the defendant." The participation agreements and trust agreements also provide that employers who become delinquent in making fringe benefit contributions are liable to the Plaintiff Funds and attorney's fees and costs.

21. ERISA provides, 29 U.S.C. § 1132(g)(2)(B), that upon recovery of unpaid benefit contributions by a fiduciary of a benefit plan, "the court shall award the plan…interest on the unpaid contributions." If litigation is instituted to collect an amount due, the trust agreements provide for interest at the rate of 9.5%.

WHEREFORE, Plaintiffs respectfully request that this Court:

    A.    Enter judgment against PREFERRED CONCRETE & EXCAVATING, INC. in favor of Plaintiffs.

    B.    Order PREFERRED CONCRETE & EXCAVATING, INC. to pay Plaintiffs not less than $28,728.38.

    C.    Order PREFERRED CONCRETE & EXCAVATING, INC. to perform and continue to perform all obligations it has undertaken with respect to the Plaintiff Funds.

    D.    Order PREFERRED CONCRETE & EXCAVATING, INC. to pay interest, costs, and reasonable attorney's fees to Plaintiffs pursuant to 29 U.S.C. § 1132(g)(2).

    E.    Grant Plaintiffs such other and further relief as may be just.

## COUNT II
*against*
### GERALD HARTMAN

1. - 21.    Plaintiffs reallege paragraphs 1 - 21 of Count I.

22.    This Count arises from a common nucleus of operative facts with Count I and is pendent to that counts.

Breach of Contract / Trust Agreements

23.    Plaintiffs are advised and believe that GERALD HARTMAN is the President, Chief Executive Officer, Chief Financial Officer, and Chief Operating Officer of PREFERRED CONCRETE & EXCAVATING, INC. and is in control of the corporation. Further, Plaintiffs are advised and believe that GERALD HARTMAN is a director of PREFERRED CONCRETE & EXCAVATING, INC.

27.    Pursuant to the collective bargaining agreements to which PREFERRED CONCRETE & EXCAVATING, INC. agreed to be bound, where there is any willful violation of any of the requirements of the trust agreements, the officers and directors of the employer shall be

personally liable for any underpayment or other pecuniary loss to the Plaintiff Funds as a result of such conduct.

25. Pursuant to the trust agreements establishing the Plaintiff Funds, to which PREFERRED CONCRETE & EXCAVATING, INC. and GERALD HARTMAN agreed to be bound, where there is any willful violation of any of the requirements of the trust agreements, the officers and directors of the employer who supervised the completion of report forms, signed report forms, or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Plaintiff Funds as a result of such conduct.

26. Plaintiffs are informed and believe that GERALD HARTMAN did so supervise the completion of report forms, sign report forms, and had personal knowledge of the willful violations of the requirements of the trust agreements and the Collective bargaining agreement, making GERALD HARTMAN personally liable for the money owed to the Plaintiff Funds by PREFERRED CONCRETE & EXCAVATING, INC.

<u>Piercing the Corporate Veil</u>

27. There is a unity of interest and ownership between PREFERRED CONCRETE & EXCAVATING, INC. and GERALD HARTMAN such that the separate personalities of the corporation and the individual no longer exist, and adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, and promote inequitable consequences, making GERALD HARTMAN personally liable for the money owed to the Plaintiff Funds by PREFERRED CONCRETE & EXCAVATING, INC.

<u>Alter Ego and/or Single Employer</u>

28. Upon information and belief, and at all times material to this complaint, PREFERRED CONCRETE & EXCAVATING, INC. and GERALD HARTMAN have been affiliated and intertwined business enterprises with substantially identical management, business

purposes, operations, jobs, services, production processes, products, equipment, facilities, customers, personnel, supervision, and ownership.

29. Based on their nature and activities as alleged the preceding two paragraphs, PREFERRED CONCRETE & EXCAVATING, INC. and GERALD HARTMAN constitute a single integrated business enterprise and have been, at all material times, alter egos and a single employer. GERALD HARTMAN is therefore bound by the terms of the collective bargaining agreements and the trust agreements, making him personally liable for the money owed to the Plaintiff Funds by PREFERRED CONCRETE & EXCAVATING, INC.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment against GERALD HARTMAN (a/k/a DONOTO LAGOIA) in favor of Plaintiffs.

B. Order GERALD HARTMAN to pay Plaintiffs $28,728.38, plus any additional amount shown to be due.

C. Order GERALD HARTMAN to pay auditors' fees to Plaintiffs.

D. Order GERALD HARTMAN to pay interest, costs, and reasonable auditors' and attorneys' fees to Plaintiffs pursuant to 29 U.S.C. § 1132(g)(2).

E. Order GERALD HARTMAN to pay punitive damages.

F. Grant Plaintiffs such other and further relief as may be just.

Respectfully submitted,

CENTRAL LABORERS' PENSION FUND, *et al*.

By: /s/ *Richard A. Toth*

Richard A. Toth
La'Mont R. Williams
DALEY AND GEORGES, LTD.
*Attorneys for Plaintiffs*
20 S. Clark St., Suite 400
Chicago, Illinois 60603-1835
(312) 726-8797
E-mail: rtoth@daleygeorges.com

#43

10898

7.  The parties agree that nothing herein is intended to nor shall it be construed as creating recognition of or bargaining with a multi-employer bargaining unit other than those already recognized by the Local Union and limited to the geographical jurisdiction of the Local Unions.

8.  This Agreement shall remain in full force and effect through April 30, 2005, and shall continue thereafter unless there has been sixty (60) days written notice, by registered or certified mail, by either party hereto of the desire to modify and amend this Agreement for negotiations. The EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract, if not notified within the specified period of time.

9.  The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete COLLECTIVE BARGAINING AGREEMENT.

IN WITNESS WHEREOF, and in consideration of the mutual promises of the parties hereto, and other good and valuable consideration, this Memorandum of Agreement was entered into this _1ST_ day of _July_, 20_02_.

ACCEPTED:

LABORERS' LOCAL UNION NO. _1203_

BY: _Ralph G. Newell_
     (Business Manager)

NORTH CENTRAL IL LABORERS'
DISTRICT COUNCIL

BY: _John F. Penn_
     (Business Manager)

_Preferred Concrete Inc._
(Contractor Name)

BY: _Neil A. Hartman Presi._
     (Name & Title)

_1321 S. Adams_
(Address)

_Freeport IL 61032_
(City, State & Zip Code)

_815-235-8676_
(Telephone Number)

_815-235-2630_
(Facsimile Number)

_____
(Federal Employer Identification Number)



JUL 2002 RECEIVED



RECEIVED JUL - 5 2002

-3-

EXHIBIT A

10898

# Laborers' International Union of North America

## LABORERS' LOCAL No. 159

2293 E. Logan    •    Decatur, Illinois 62526    •    (217) 422-3078
FAX (217) 422-8031

**MARTIN EASTERLING**
Business Representative

**TERRY SIGFRIED**
President

**WOODROW DAVID**
Secretary-Treasurer

Articles of Agreement Covering Building Construction
**Effective May 1, 2004 thru April 30, 2005**
Wage Addendum Macon and Southern Moultrie Counties
Schedule of Hourly Wage Rates, Contributions and Deductions;

| | | |
|---|---|---|
| Wage Rates: | Basic Wage Rate | $22.00 |
| | Mason Tender with Hot Materials | $23.00 |
| | Certified Asbestos Abatement Labor | $23.50 |
| | Pension | $4.00 |
| | Welfare and Dental | $4.60 |
| | Annuity | $ .50 |
| | Training Fund | $ .50 |
| | I.A.F. | $ .12 |
| | L.E.C.E.T. | $ .25 |
| | F.F.C. | $ .10 |
| | Total Basic Rates & Fringes | $32.07 |

1) Dues Check Off **3.5%** of gross wages plus $ .45 per hour deducted from wage and payable to Laborers Local #159 along with Working Assessment Report
2) Vacation Fund $ .60 per hour deducted from wage payable to Central Laborers Fringe Benefit Funds.
Labor Foreman **$ 1.00** above highest paid laborer under his supervision General Labor Foreman **$2.00** above Labor Foreman.

_Preferred Concrete &_      _Business Manager_
Contractor _Excavating, Inc._      Title

_[signature]_      _[signature]_
Signature-Title _Sec. Treas_      Signature

7-9-04      6-10-04
Date      Date

[RECEIVED JUL 2004 stamp]

EXHIBIT B

10898

## PARTICIPATION AGREEMENT

B#33

1. This Participation Agreement is entered into between **PREFERRED CONCRETE & EXCAV. INC** (Employer) and the Central Laborers' Pension Fund, ~~The Central Laborers' Welfare Fund,~~ Central Laborers' Annuity Plan, Illinois Laborers' and Contractors' Training Fund and such other Funds or Plans listed below (all referred to as the "Funds"). The Employer hereby agrees that this document represents the detailed written Agreement required by the Labor Management Relations Act (29 U.S.C. Section 186 (c)) to permit the Funds to receive contributions from the Employer on behalf of Employees employed by the Employer within the jurisdiction of the Funds.

2. The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trust establishing and amending the Central Laborers' Pension Fund and Central Laborers' Welfare Fund and all other funds or plans comprising the Funds, all as heretofore and hereafter amended (the Trust Agreements), as though the Employer had actually signed the same. The various Agreements and Declarations of Trust are hereafter referred to as the "Trust Agreements." The Employer agrees to make contributions to the Funds (1) on behalf of all Employees, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements, (2) for all jobs within the geographical jurisdiction of the Funds, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements, (3) for employment on all job classifications, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements.

3. The Employer hereby agrees to pay the following contributions to the Funds for each Employee of the Employer, and the Employer agrees that the following contribution rates may change or vary with the location of the jobs or that the rates may be increased and/or decreased from time to time pursuant to the Trust Agreements or applicable Collective Bargaining Agreements.

   | | | | |
   |---|---|---|---|
   | 4.00 | per hour to Central Laborers' Pension Fund | .12 | per hour to Industry Advancement Fund |
   | 3.15 | per hour to ~~Central Laborers' Welfare Fund~~ NCIL Hlth/Welfare | 3.25% | Working Dues (% or cents per hour) |
   | 3.45 | per hour to Central Laborers' Annuity Fund | .22 | LECT |
   | .30 | per hour to Illinois Laborers' and Contractors' Training Trust Fund | .08 | Other Bldg Trds |
   | .08 | ~~MRFFC~~ MROC | .06 | Other Tricon |

4. The Employer agrees to make the required contributions monthly and in such manner as required by the Trustees of the Funds for all Employees as defined in the Trust Agreements and the Trustees shall have the authority to have their accountant audit all payroll and all wage, job, bonds and other relevant records of the Employer upon reasonable notice for the purpose of determining the accuracy of the Employer's contributions to the Funds.

5. For the purpose of this Agreement, each hour worked for which the Employee receives pay, and other hours for which pay is received by the Employee in accordance with this and/or any applicable Agreement, shall be counted as hours for which contributions are payable.

6. If an Employer fails to pay contributions as required by the Trust Agreements and this Agreement, the Funds shall have the right to take whatever steps are necessary to secure compliance with this Agreement and the Trust Agreements, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all reasonable costs of collection of the payments due together with reasonable attorneys' fees and such other reasonable costs and charges as may be assessed by the Trustees of the Funds pursuant to the Trust Agreements, including the cost of any and all audits. In addition, the Employer agrees that all remittances not received by the 15th day of the month next following the month for which the contributions are due are subject to assessment of Liquidated Damages in the amount of 10% of the contributions or $25.00 minimum per remittance, to deter the increased administrative costs resulting from late payments, all pursuant to the Trust Agreements.

7. The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the Funds such Trustees as are now serving, or their successors who will serve in the future, as Employer Trustees together with their successors. The Employer further agrees to be bound by all actions taken by the Board of Trustees pursuant to the Trust Agreements as heretofore and/or hereafter amended.

8. The Pension, Welfare and Annuity Plans adopted by the Trustees of the Funds and Plans shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions as a deduction for income tax purposes.

NO ALTERATIONS OR ADDITIONS TO THIS PARTICIPATION AGREEMENT SHALL BE EFFECTIVE UNLESS APPROVED IN WRITING BY THE TRUSTEES OF THE FUND.

| EMPLOYER | CENTRAL LABORERS' FUNDS |
|---|---|
| **PREFERRED CONCRETE & EXCAV. INC** | |
| Name of Business | Authorized Signature |
| 1321 S. ADAMS  P.O. Box | Executive Administrator |
| Address | Title |
| FREEPORT IL 61032 | |
| City/State/Zip Code | UNION |
| 815-235-3676 | Territory in which Agreement signed Local #165 |
| Telephone | |
| David A. Hartman | Chas H Smith |
| Authorized Signature  PRESIDENT | Authorized Signature  SEC-TRES |
| Title 8-14-02 | Title 8-14-02 |
| Date | Date |

(RECEIVED SEP 2002 stamp)

EXHIBIT C

White copy: Central Laborers' Pension, Welfare and Annuity Funds, Post Office Box 1267, Jacksonville, Illinois 62651-1267
Pink copy: Employer
Yellow copy: District Council or Local Union

10898  39-S

## PARTICIPATION AGREEMENT

1. This Participation Agreement is entered into between **PREFERRED CONCRETE** (Employer) and the Central Laborers' Pension Fund, The Central Laborers' Welfare Fund, Central Laborers' Annuity Plan, Illinois Laborers' and Contractors' Joint Apprenticeship and Training Program and such other Funds or Plans listed below (all referred to as the "Funds"). The Employer hereby agrees that this document represents the detailed written Agreement required by the Labor Management Relations Act (29 U.S.C. Section 186 (c)) to permit the Funds to receive contributions from the Employer on behalf of Employees employed by the Employer within the jurisdiction of the Funds.

2. The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trust establishing and amending the Central Laborers' Pension Fund and Central Laborers' Welfare Fund and all other funds or plans comprising the Funds, all as heretofore and hereafter amended (the Trust Agreements), as though the Employer had actually signed the same. The various Agreements and Declarations of Trust are hereafter referred to as the "Trust Agreements." The Employer agrees to make contributions to the Funds (1) on behalf of all Employees, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements, (2) for all jobs within the geographical jurisdiction of the Funds, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements, (3) for employment on all job classifications, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements.

3. The Employer hereby agrees to pay the following contributions to the Funds for each Employee of the Employer, and the Employer agrees that the following contribution rates may change or vary with the location of the jobs or that the rates may be increased and/or decreased from time to time pursuant to the Trust Agreements or applicable Collective Bargaining Agreements.

| | | | |
|---|---|---|---|
| 4.00 | per hour to Central Laborers' Pension Fund | .12¢ | per hour to Industry Advancement Fund |
| 4.60 | per hour to _____ Welfare Fund | 3.5% + 45¢ | Working Dues (% or cents per hour) |
| .50¢ | per hour to _____ Annuity Fund | .25¢ | LECET |
| .50¢ | per hour to Illinois Laborers' and Contractors' Joint Apprenticeship & Training Program | .60¢ | Vacation |
| .10¢ | MRFFC | | Other _____ |
| | | | Other _____ |

4. The Employer agrees to make the required contributions monthly and in such manner as required by the Trustees of the Funds for all Employees as defined in the Trust Agreements and the Trustees shall have the authority to have their accountant audit all payroll and all wage, job, bonds and other relevant records of the Employer upon reasonable notice for the purpose of determining the accuracy of the Employer's contributions to the Funds.

5. For the purpose of this Agreement, each hour worked for which the Employee receives pay, and other hours for which pay is received by the Employee in accordance with this and/or any applicable Agreement, shall be counted as hours for which contributions are payable.

6. If an Employer fails to pay contributions as required by the Trust Agreements and this Agreement, the Funds shall have the right to take whatever steps are necessary to secure compliance with this Agreement and the Trust Agreements, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all reasonable costs of collection of the payments due together with reasonable attorneys' fees and such other reasonable costs and charges as may be assessed by the Trustees of the Funds pursuant to the Trust Agreements, including the cost of any and all audits. In addition, the Employer agrees that all remittances not received by the 15th day of the month next following the month for which the contributions are due are subject to assessment of Liquidated Damages in the amount of 10% of the contributions or $25.00 minimum per remittance, to deter the increased administrative costs resulting from late payments, all pursuant to the Trust Agreements.

7. The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the Funds such Trustees as are now serving, or their successors who will serve in the future, as Employer Trustees together with their successors. The Employer further agrees to be bound by all actions taken by the Board of Trustees pursuant to the Trust Agreements as heretofore and/or hereafter amended.

8. The Pension, Welfare and Annuity Plans adopted by the Trustees of the Funds and Plans shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions as a deduction for income tax purposes.

NO ALTERATIONS OR ADDITIONS TO THIS PARTICIPATION AGREEMENT SHALL BE EFFECTIVE UNLESS APPROVED IN WRITING BY THE TRUSTEES OF THE FUND. *Connie Hartman*

**EMPLOYER**

Name of Business: *Preferred Concrete & Excavating, Inc.*
Address: *PO Box 696*
City/State/Zip Code: *Freeport, IL 61032*
Telephone: *815-235-3676*
Authorized Signature: *Connie Martino*
Title: *Sec. Treas.*
Date: *7-9-04*

**CENTRAL LABORERS' FUNDS**

Authorized Signature: _____
Title: Executive Director

**UNION**

Territory in which Agreement signed: Local _____
Authorized Signature: _____
Title: _____
Date: *6-10-04*

[RECEIVED JUL 2004 stamp]

**EXHIBIT D**

White copy: Central Laborers' Pension, Welfare and Annuity Funds, Post Office Box 1267, Jacksonville, Illinois 62651-1267
Pink copy: Employer
Yellow copy: District Council or Local Union